**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sandra Diiorio, | No. CV-20-02330-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Sandra Diiorio's ("Plaintiff") appeal of her denial of social security disability benefits. Plaintiff argues that the Administrative Law Judge ("ALJ") erred in his residual functional capacity ("RFC") determination by mischaracterizing and "cherry-picking" evidence from the record, improperly disregarding Plaintiff's symptom testimony, and relying on the opinion of a Physician Assistant ("PA") who examined Plaintiff outside of the scope of her license.

## I.    BACKGROUND

Plaintiff was 57 years old at the time she applied for benefits, and she holds at least a high school education. (Doc. 22 at 4–5). Prior to becoming disabled, Plaintiff worked as a receiving clerk, foster parent, and retail manager. (*Id.* at 5). Plaintiff suffers from physical impairments consisting of "degenerative disc disease of the lumbar spine with radiculopathy, osteoarthritis of the hips, and osteopenia," among other claimed impairments. (*Id.*) Plaintiff asserts that she must be found disabled because these conditions impair her ability to function on a regular and continuing basis. (*Id.* at 5–6). Plaintiff has

not engaged in substantial gainful activity since July 28, 2017, "the alleged onset date." (Doc. 19-3 at 28).

On January 30, 2018, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning July 28, 2017. (*Id.* at 1). Her claim "was denied initially on April 14, 2018, and upon reconsideration on September 27, 2018." (*Id.*) Plaintiff then appeared before Administrative Law Judge (ALJ) Scot Gulick on March 6, 2020. (*Id.* at 11). The ALJ issued an unfavorable decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. (*Id.*) After Plaintiff's request for review by the Social Security Administration Appeals Council was denied on October 22, 2020, she commenced this action on December 3, 2020. (Doc. 1).

## II. LEGAL STANDARD

An ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "Substantial evidence means 'more than a mere scintilla' but 'less than a preponderance.' It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 750 (citations omitted).

To determine whether substantial evidence supports the ALJ's decision, the court must review "the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ is ultimately responsible for "determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* Therefore, "where the evidence is susceptible to more than one rational interpretation," the ALJ's conclusion must be upheld. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "[T]he [C]ourt may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Instead, "the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied on in support of those reasons." *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

### A. Definition of Disability

For a claimant to qualify for social security disability benefits, she must show that she "is under disability." 42 U.S.C. § 423(a)(1)(E). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). This impairment must be of such severity that the claimant "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work [that] exists in the national economy." *Id.* § 423(d)(2)(A).

### B. The Five-Step Evaluation Process

The Social Security regulations have set forth a five-step sequential process to evaluate a claim of disability. 20 C.F.R. § 404.1520(a)(4) (2020); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through the first four steps, but the burden shifts to the Commissioner in the final step. *See Reddick*, 157 F.3d at 721. The five steps are as follows:

First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.*

If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[ ] [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. *Id.* § 404.1522(b). Further, the impairment must either have lasted for "a continuous period of at least 12 months," be expected to last for such a period, or be expected "to result in

death." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii).

Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. *Id.* If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] case record." *Id.* § 404.1520(e). A claimant's RFC "is the most [she] can still do despite all [her] impairments, including those that are not severe, and any related symptoms." *Id.* § 404.1545(a)(1).

At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its RFC assessment "with the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work she previously did, the claimant is not disabled. *Id.* Otherwise, the ALJ proceeds to the final step.

At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(g)(1). If the claimant can perform other work, she is not disabled. *Id.* If the claimant cannot perform other work, she will be found disabled. *Id.*

When evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *See id.* §§ 404.1520(a)(3), 404.1520b.

**C.  The ALJ's Opinion**

The ALJ first settled a preliminary question regarding whether Plaintiff had met the insured status requirements of the Social Security Act, finding that Plaintiff had "acquired

1    sufficient quarters of coverage to remain insured through December 31, 2022." (Doc. 19-
2    3 at 26).

3        Next, the ALJ found that Plaintiff had not engaged in substantial gainful activity
4    since the alleged onset date of July 28, 2017. (*Id.* at 27). The ALJ found that Plaintiff
5    suffered the following severe impairments: "degenerative disc disease of the lumbar spine
6    with radiculopathy, osteoarthritis of the hips, and osteopenia." (*Id.*) At step three, the ALJ
7    found that Plaintiff's "impairment or combination of impairments" did not meet or
8    medically equal "the severity of one of the listed impairments" in the Social Security
9    regulations that automatically result in a finding of disability. (*Id.* at 29).

10       Prior to moving on to step four, the ALJ conducted an RFC determination in light
11   of "the entire record." (*Id.* at 30). The ALJ found that Plaintiff has the capacity to perform
12   light work as defined in 20 C.F.R. § 404.1567(b), with additional limitations. (*Id.*) The ALJ
13   found that Plaintiff "can sit for six hours in an eight-hour day and stand and/or walk for six
14   hours in an eight-hour day," "can occasionally climb ladders, ropes, scaffolds, ramps and
15   stairs," "can frequently balance and occasionally stoop, kneel, crouch, and crawl," and "can
16   occasionally work at unprotected heights and around moving mechanical parts." (*Id.*) In so
17   finding, the ALJ stated that Plaintiff's testimony was not consistent with the medical record
18   and relied upon the medical opinions of several consultants, including a physician assistant
19   whose opinion Plaintiff now contests.

20       At step four, the ALJ found that Plaintiff was able to perform "past relevant work
21   as a retail manager (DOT 185.167-046, light, skilled, SVP 7, performed at medium)." (*Id.*
22   at 34). Thus, the ALJ concluded that Plaintiff was not disabled under the Social Security
23   Act. (*Id.*)

24   **III.   DISCUSSION**

25       Plaintiff argues that the ALJ erred in his RFC determination for two reasons. (*See*
26   *generally* Doc. 22). Specifically, Plaintiff argues that the ALJ improperly disregarded
27   Plaintiff's symptom testimony based on mischaracterized and "cherry-pick[ed]" evidence
28   from the record and improperly relied on the opinion of a Physician Assistant ("PA") who

examined Plaintiff outside of the scope of her license. (*Id.*)

## A. Plaintiff's Subjective Symptom Testimony

Plaintiff argues that the ALJ erred by rejecting her subjective symptom testimony. (Doc. 22 at 6). "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment '[that] could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). To satisfy this first step, "[t]he claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof[,] ... [n]or must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom." *Smolen*, 80 F.3d at 1282. The claimant must only establish a reasonable inference of causation. *Id.*

If the claimant satisfies the first step, and the ALJ finds no affirmative evidence of malingering, *Garrison*, 759 F.3d at 1014, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 749–750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Instead, the ALJ "may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). To make specific findings, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

The Ninth Circuit has held that "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Although Plaintiff need not produce evidence to corroborate the severity of her symptoms, *Smolen*, 80 F.3d at 1282, when

1    evidence *is* produced that contradicts with Plaintiff's symptom testimony, the ALJ can use

2    it as a sufficient reason to reject the testimony. *See, e.g.*, *Carmickle*, 533 F.3d at 1661; *Alto*

3    *v. Saul*, 818 Fed. App'x. 734, 737 (9th Cir. 2020); *Everson v. Colvin*, 577 Fed. App'x. 743,

4    744 (9th Cir. 2014).

5         In describing her symptoms, Plaintiff testified that she left her last job because of

6    lower lumbar pain, and that she can "walk only five hundred feet before resting, stand

7    fifteen to thirty minutes before sitting, and sit for fifteen to twenty minutes before

8    standing." (Doc. 19-3 at 31 (citing Doc. 19-3 at 64–65)). Plaintiff further testified that "she

9    has undergone two radiofrequency ablations and multiple injections but has not received

10   much pain relief." (*Id.*) Plaintiff further testified that "she did receive some pain relief with

11   physical therapy, but her sessions ended in 2019 when she was no longer advancing." (*Id.*)

12        Here, the ALJ made the following statement regarding Plaintiff's symptom

13   testimony:

14               After careful consideration of the evidence, the undersigned
                 finds that the claimant's medically determinable impairments
15               could reasonably be expected to cause the alleged symptoms;
                 however, the claimant's statements concerning the intensity,
16               persistence and limiting effects of these symptoms are not
                 entirely consistent with the medical evidence and other
17               evidence in the record for the reasons explained in this
                 decision.
18

19   (Doc. 19-3 at 31).

20        The ALJ noted the following medical evidence from the record as inconsistent with

21   Plaintiff's symptom testimony: Plaintiff's normal sensation, negative straight-leg raising

22   test, full range of motion, ability to walk on her heels and toes, normal muscle bulk,

23   strength, gait, and deep tendon reflexes, and only a mildly decreased range of motion in

24   her lumbar spine. (Doc. 19-3 at 32). The ALJ further noted that Plaintiff "presented to a

25   primary care physician in June 2019, where she reported no pain in her spine and she

26   exhibited a normal range of motion and normal strength in all muscle groups." (*Id.*)

27   Additionally, the ALJ noted that Plaintiff has had her right hip replaced and reported in

28   2018 "that her pain had resolved, although she still had some limitation in movement."

(*Id.*)

The Court finds the ALJ's provided reasons adequately supported by the record. (*See* Doc. 19-8 at 58–61, 89–95, 117–21; Doc. 19-9 at 14–17). For example, Plaintiff testified that she left her last job because of lower lumbar pain, and that she can "walk only five hundred feet before resting, stand fifteen to thirty minutes before sitting, and sit for fifteen to twenty minutes before standing." (Doc. 19-3 at 31 (citing Doc. 19-3 at 64–65)). However, as the ALJ noted in his opinion, "[a]fter a gap in treatment, [Plaintiff] presented to a primary care physician in June 2019, where she reported no pain in her spine and she exhibited a normal range of motion and normal strength in all muscle groups." (Doc. 19-3 at 32 (citing Doc. 19-8 at 117-21)). The ALJ also relied on the medical opinions of five different medical sources who opined that Plaintiff was capable of at least the level of work the ALJ prescribed for Plaintiff. (Doc. 19-3 at 33–34). Thus, the Court finds that the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony in view of the medical opinions and other record evidence.

Moreover, as pointed out by the ALJ, this evidence also highlights an inconsistency in Plaintiff's own statements regarding her claimed limitations and her reported pain levels during treatment. The Ninth Circuit has held that "'[i]n determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony.'" *Khanishian v. Astrue*, 238 Fed. App'x 250, 252–53 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Plaintiff asserts that the ALJ erred in his determination that Plaintiff's procedures to treat her ailments were "routine and conservative," arguing that "no reasonable fact finder could conclude Plaintiff's treatment is 'routine' or 'conservative.'" (Doc. 22 at 10). The Ninth Circuit has noted that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). Here, the ALJ properly applied the factors that ALJs must consider when

evaluating the persuasiveness of medical opinions and prior administrative medical findings, specifically noting both supportability and consistency of each medical source's testimony. (See Doc. 19-3 at 33–34); 20 C.F.R. § 404.1520c(c). Additionally, the ALJ pointed to facts in the record consistent with his "routine and conservative" treatment characterization: Plaintiff is not a surgical candidate, is prescribed just 800 milligrams of ibuprofen, and has undergone two lumbar medial branch blocks. (Doc. 19-3 at 32); *see also Bechtold v. Comm'r of Soc. Sec.*, No. 2:19-CV-85-DMC, 2020 WL 2319873, at \*5 (E.D. Cal. May 11, 2020) (listing lumbar medial branch blocks under "conservative treatments"). Therefore, the ALJ's characterization of Plaintiff's treatment as "routine and conservative" was not erroneous; this finding provides additional support for the ALJ's rejection of Plaintiff's symptom testimony.

Plaintiff further asserts that the ALJ mischaracterized the record in various instances. First, Plaintiff argues that the ALJ "cherry-pick[ed] from mixed results," which constitutes legal error. However, when the record contains such asserted "mixed results," the ALJ must "determinin[e] credibility, resolv[e] conflicts in medical testimony, and . . . resolv[e] ambiguities." *Andrews*, 53 F.3d at 1039. Thus, when reviewing the ALJ's decision, "where the evidence is susceptible to more than one rational interpretation," the ALJ's conclusion must be upheld. *Morgan*, 169 F.3d at 599.

Here, Plaintiff cites authority that found an ALJ to have cherry-picked from among evidence in a case, explaining the special importance of avoiding this when a case involves *mental* health issues. *See Garrison*, 759 F.3d at 1017. The Court is not convinced that *Garrison* bears on this case, given Plaintiff's ailments are physical in nature. Regardless, in *Garrison*, the Ninth Circuit Court of Appeals instructed that an ALJ may not "pick out a few isolated instances of improvement," and that an ALJ must read a physician's statements "in context of the overall diagnostic picture he draws." *Id.* In the present case, the ALJ not only noted specific instances of improvement, but also recited the diagnostic findings of five medical sources that were consistent with the objective evidence in the record. (Doc. 19-3 at 33–34). Therefore, the Court does not find that the ALJ improperly

"cherry-picked" among mixed results. At most, the record in this case could support "more than one rational interpretation," so the Court must defer to the ALJ's determination. *Morgan*, 169 F.3d at 599.

Finally, Plaintiff also argues that the ALJ erroneously "render[ed] a medical opinion on extra-record evidence" when the ALJ described an MRI of Plaintiff's lumbar spine. (Doc. 22 at 8). However, upon examination of the record, the ALJ did not rely on any extra-record evidence. It is fully within an ALJ's discretion to resolve ambiguities and discrepancies within the medical evidence record; here, the ALJ cited to evidence in the record that he relied upon in concluding that Plaintiff's testimony was only credible as to the existence, not the degree of severity, of Plaintiff's lumbar pain. (*See* Doc. 19-3 at 31–32). For example, the ALJ cited multiple examinations of Plaintiff which showed Plaintiff's normal muscle bulk, strength, gait, range of motion, and reflexes. (*Id.* at 7). Further, the ALJ noted that Plaintiff is not a surgical candidate, and her only treatments currently consist of ibuprofen and an upcoming lumbar medial branch block. (*Id.*) Therefore, the ALJ's characterization of medical evidence is sufficiently supported by the record.

Based on the foregoing, the ALJ provided clear and convincing reasons to discount Plaintiff's symptom testimony that were supported by substantial evidence in the record.

## B. The ALJ's Reliance on Physician Assistant Opinion

Plaintiff further argues that the ALJ improperly relied on physician assistant ("PA") Christine Joy's medical opinion regarding an examination conducted "outside her licensed scope of practice." (Doc. 22 at 13). Plaintiff contends that PA Joy's examination does not comport with the licensing requirements under A.R.S. § 32-2531(J), such that she is disqualified from the "acceptable medical source" definition under 20 C.F.R. § 404.1502(a)(8). (*Id.* at 14).

Medical sources are defined as individuals who are "licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law." 20 C.F.R. § 404.1502(d). Additionally, acceptable medical sources are a subcategory of

medical sources specifically delineated in the statute as such. *See* 20 C.F.R. § 404.1502(a). As of March 2017, the Social Security Administration broadened the scope of "acceptable" medical sources to include physician assistants "for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions." *David D. v. Saul*, 405 F. Supp. 3d 868, 886 n.4 (D. Or. 2019) (citing 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263).

Physician assistants are subject to the state licensure and scope of practice requirements contained in A.R.S. § 32-3531. Under this statute, physician assistants are permitted to "perform health care tasks in any setting authorized by the supervising physician," including "[p]erforming physical examinations." A.R.S. § 32-2531(G)(2). Additionally, physician assistants must practice under a supervising physician. A.R.S. § 32-2531(D).

Specifically, A.R.S. § 32-3531(J) requires:

> Supervision must be continuous but does not require the personal presence of the physician at the place where health care tasks are performed if the physician assistant is in contact with the supervising physician by telecommunication. If the physician assistant practices in a location where a supervising physician is not routinely present, the physician assistant must meet in person or by telecommunication with a supervising physician at least once each week to ensure ongoing direction and oversight of the physician assistant's work. The board by order may require the personal presence of a supervising physician when designated health care tasks are performed.

Plaintiff asserts that the PA was practicing "outside her licensed scope of practice" because her examination was not "specifically authorized by the supervising physician" and the supervising physician was not meeting with the PA on a "continuous" basis. (Doc. 22 at 14). Plaintiff relies on a letter from Dr. Glenn R. Kunsman, DO to the Disability Determination Services Administration, dated July 5, 2017, requesting that PA Joy be added as a subcontractor to his consultative examiner contract. (Doc. 19-7 at 64). In that letter, Dr. Kunsman states in relevant part:

1
2
3
4
5
6

> Christine Joy, PA will shadow me or my delegate for the first
> day. On [her] second day Christine Joy, PA will review written
> reports with me or my delegate. Then I will continue to
> randomly select reports completed by Christine Joy, PA for
> review. Our office maintains a log of client sign in/sign out and
> times spent by each physician with clients. Our office manager
> monitors on a bi-weekly basis the timely submission of reports
> to DDSA.

(Doc. 19-7 at 64).

7
8
9
10
11
12
13
14
15
16
17
18
19
20

Upon review of 20 C.F.R. § 404.1502(a)(8), the Court finds that references to a PA's "scope of practice" appear to address whether a PA is operating within the bounds of his or her education and training in a particular medical specialty. *See* 20 C.F.R. § 404.1502(a)(8). Section 404.1502(a) enumerates various medical sources and the requirements that must be met for each of those medical sources to constitute an "acceptable medical source." For example, § 404.1502(a)(4) states that a licensed podiatrist can be an acceptable medical source "for impairments of the foot, or foot and ankle [], depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or the foot and ankle." As another example, § 404.1502(a)(5) deems a "qualified speech-language pathologist" an acceptable medical source for "speech and language impairments only." The subsection further elaborates that qualified with respect to speech pathology means "licensed by the State professional licensing agency… in the State in which he or she practices." 20 C.F.R. § 404.1502(a)(5).

21
22
23
24
25
26
27
28

Here, § 404.1502(a)(8) states that a licensed PA is an acceptable medical source for "*impairments* within his or her licensed scope of practice." *Id.* (emphasis added). In the context of the surrounding language, it is clear that "scope of practice" is meant to require that medical sources be opining on medical impairments within their area of expertise, as allowed or limited by relevant state law. *See Kapp v. Commissioner of Social Security Administration*, No. CV-18-04565-PHX-SMB, 2021 WL 118540, at *2, 5 (D. Ariz. Jan. 13, 2021) (affirming ALJ decision finding a massage therapist's opinion that a plaintiff "could not stand for long periods of time without pain, fatigue, and occasional dizziness" and had "extreme limitations in Plaintiff's left shoulder abduction and flexion and spasms

- 12 -

with other muscles" was "outside the scope of her expertise as a massage therapist"); *see also Packer v. Astrue*, No. ED CV 07-01695-VBK, 2008 WL 4531831, at *3–4 (C.D. Cal. Oct. 6, 2008) (determining that, in the Social Security context, a clinical psychologist's "scope of practice" is different from other health care professionals "causing differences to exist in both their training and the types and uses of the drugs involved.") (citations omitted). Plaintiff does not argue that PA Joy was opining on impairments outside of her medical expertise, and the Court does not find otherwise.[1]

To the extent Plaintiff argues that PA Joy is in violation of Arizona physician assistant licensure requirements and that such a violation prevents her from being considered an acceptable medical source under the Social Security Act, the Court disagrees. Plaintiff argues that physical examinations by a PA must be "specifically authorized" by a supervising physician to fall within a PA's permitted "scope of practice" per A.R.S. § 32-3531. (Doc. 22 at 14). This assertion is unsupported by the very statute upon which Plaintiff relies. A PA "may perform health care tasks in any *setting* authorized by the supervising physician," including performing physical examinations. A.R.S. § 32-3531(G)(2) (emphasis added). The statute makes no mention of a requirement that a PA must be specifically authorized by her supervising physician each time she performs one

---

[1] The Court acknowledges that in defining an "acceptable medical source," 20 C.F.R. § 404.1502(a) may incorporate the definition of "medical source" from § 404.1502(d), which separately requires that individuals work "within the scope of practice permitted under State or Federal law." However, the Court assumes, without deciding, that "scope of practice" has the same meaning in both clauses of the same section of the statute, namely, that PA Joy not opine on medical conditions outside of her training and expertise, as determined by the Arizona state licensure requirements for PAs. *United States v. Lopez*, 998 F.3d 431, 437 (9th Cir. 2021) ("The canon of consistent usage requires a court to presume that 'a given term is used to mean the same thing throughout a statute.'") (quoting *Brown v. Gardner*, 513 U.S. 115, 118 (1994).

of the listed tasks. Moreover, Plaintiff has not provided any evidence to support her contention that the setting in which the PA performed the examination was not authorized or otherwise violated the Arizona or Federal licensure requirements.

The Court is equally unpersuaded that the representations about PA Joy's job responsibilities in Dr. Kunsman's letter constitute admissions that PA Joy is not subject to supervision on a "continuous" basis as that term is used in A.R.S. § 32-3531(J). While Dr. Kunsman's letter states that PA Joy's reports will be randomly selected for review and report submission is monitored on a bi-weekly basis, (Doc. 19-7 at 64), Plaintiff has not shown how such a process violates the requirement that Plaintiff be continuously supervised. Indeed, based on Dr. Kunsman's statements referencing "our office" and "our office management," it appears that Dr. Kunsman is physically present in the same office that PA Joy conducts her examinations, such that the weekly meetings laid out in the statute are not applicable. A.R.S. § 32-3531(J) ("If the physician assistant practices in a location where a supervising physician is not routinely present, the physician assistant must meet in person or by telecommunication with a supervising physician at least once each week."). Plaintiff is not arguing that PA Joy is not properly licensed as a physician assistant in Arizona—only that she is allegedly violating the terms of her licensure, which the Court does not find persuasive. Plaintiff does not cite to any authority, and the Court is not aware of any, requiring a different conclusion. *See Morgan*, 169 F.3d at 599 (holding that "where the evidence is susceptible to more than one rational interpretation," the ALJ's conclusion must be upheld).

Therefore, the ALJ did not err in considering the PA's medical opinion in his RFC determination.

However, even if the ALJ erred in relying on the PA's opinion, this error is harmless because the ALJ also cited consistent opinions of four other medical sources, the validity of which Plaintiff does not contest. (Doc. 19-3 at 33–34). In determining whether an ALJ's error is harmless, courts are "to apply the same kind of harmless-error rule that courts ordinarily apply in civil cases." *Molina v. Astrue*, 674 F.3d 1104, 1119 (9th Cir. 2012)

(citation omitted). The reviewing court must "give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009); 28 U.S.C. § 2111). Error warrants reversal where it "more probably than not tainted the verdict," taking into consideration "whether the evidence at issue was cumulative of other competent testimony," and "the overall strength of the case against the appealing party." *Id.* (internal quotation marks and citations omitted).

Specific to social security disability actions, the Court must analyze the error "in light of the circumstances of the case." *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). "[E]rrors are harmless if they are 'inconsequential to the ultimate nondisability determination," and the Court may not "set aside the denial of a disability claim unless 'the [Commissioner's] findings are not supported by evidence *in the record as a whole*.'" *Molina*, 674 F.3d at 1121 (quoting *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985)) (emphasis added).

Here, the ALJ cited the opinions of five medical sources to support his RFC assessment. (Doc. 19-3 at 33–34). All five medical sources opined that Plaintiff could perform a "range of light work," with slight variations in the exact "range" of work Plaintiff could perform. (*Id.*) The ALJ did not rely more heavily on the PA's medical opinion than the opinions of the other four medical sources; he merely cited it as one of five medical opinions in the record that support his RFC determination. Moreover, the ALJ cited to evidence in the record showing that Plaintiff exhibits normal sensation, reflexes, range of motion, and strength in all muscle groups, which is consistent with each of the medical opinions, including the PA's. (*See* Doc. 19-3 at 32). Thus, considering the record as a whole, even if the ALJ erred by relying on the PA's medical opinion, this constituted harmless error because the PA's opinion was cumulative of other medical source opinions and objective medical evidence in the record.

Therefore, in light of the relevant regulations and the cumulative evidence cited, the ALJ's citation to the PA's medical opinion does not persuade the Court to reverse the ALJ's

1  findings.

2  **C.  New Evidence Brought After ALJ's Decision**

3      Plaintiff also argues that in the event the Court does not reverse for immediate award

4  of benefits, the Court must remand for further administrative proceedings "to address

5  Plaintiff's treating physical therapist's medical statements" and an MRI of Plaintiff's

6  lumbar spine, which were not before the ALJ prior to his decision but were considered by

7  the Appeals Council in its review. (Doc. 22 at 11); (Doc. 19-3 at 3).

8      The Ninth Circuit has held that "when a claimant submits evidence for the first time

9  to the Appeals Council, which considers that evidence in denying review of the ALJ's

10  decision, the new evidence is part of the administrative record, which the district court must

11  consider in determining whether the Commissioner's decision is supported by substantial

12  evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159–60 (9th Cir. 2012).

13  Therefore, for a remand to be justified, Plaintiff must show (1) materiality of the evidence

14  to determining Plaintiff's disability, and (2) that Plaintiff had good cause for failing to

15  produce the evidence earlier. *See Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).

16      Evidence is material if it bears "directly and substantially on the matter in dispute."

17  *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984). "As such, it must be probative of

18  the claimant's condition at or before the time of the disability hearing." *Held v. Colvin*, 82

19  F. Supp. 3d 1033, 1042 (N.D. Cal. 2015) (citing 20 C.F.R. § 404.970(b); *Sanchez v. Sec'y*

20  *of Health & Human Servs.*, 812 F.2d 509, 511 (9th Cir. 1987)). "To demonstrate good

21  cause, the claimant must demonstrate that the new evidence was unavailable earlier."

22  *Mayes*, 276 F.3d at 463 (citing *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)); *see*

23  *also Johnson v. Schweiker*, 656 F.2d 424, 426 (9th Cir. 1981) ("Good cause can be shown

24  'where no party will be prejudiced by the acceptance of additional evidence[.]'") (quoting

25  *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975)).

26  **a.  Physical Therapist Heywood's Opinion**

27      Plaintiff seeks remand to an ALJ to review physical therapist Mike Heywood PT,

28  DPT's Medical Source Statements submitted after the ALJ rendered his disability

- 16 -

1    determination. (Doc. 22 at 11).

2         Plaintiff submitted two Medical Source Statements from DPT Heywood, dated July

3    1, 2020, to the Appeals Council: (1) a Medical Source Statement regarding Plaintiff's

4    cervical spine disorder and lumbar impairments; and (2) a Medical Source Statement

5    regarding Plaintiff's physical ability to do work-related activities. (Doc. 19-3 at 2, 43–50).

6    In its Notice of Appeals Council Action, the Appeals Council concluded that it did not

7    "find this evidence [to] show a reasonable probability that it would change the outcome of

8    the decision." (*Id.*)

9         Here, Plaintiff has not shown that DPT Heywood's opinions are material or that

10   there is good cause for her failure to incorporate this evidence into the record before the

11   ALJ.

12        First, Plaintiff has not established that this evidence is material to Plaintiff's

13   disability determination, as the evidence at issue consists of opinions which post-date the

14   ALJ's disability determination from Plaintiff's physical therapist whose opinion is not

15   supportable or consistent with the overall record. (*See* Doc. 22 at 11–13); 20 C.F.R. §

16   404.1520c. The March 2017 changes to the Social Security regulations "clarified that all

17   medical sources, not just acceptable medical sources, can provide evidence that will be

18   considered medical opinions." *David D.*, 405 F. Supp. 3d at 886 n.4. Under these new

19   regulations, medical source opinions are evaluated using the factors identified in 20 C.F.R.

20   § 404.1520c, the most important factors being supportability and consistency with the

21   record evidence. 20 C.F.R. § 404.1520c(b)(2); *see also David D.*, 405 F. Supp. 3d at 886

22   n.4.

23        While Plaintiff asserts that DPT Heywood's medical source statements opine on

24   Plaintiff's impairments from July 29, 2017 through July 1, 2020 based on a notation on the

25   medical source statement (Doc. 22 at 13; Doc. 19-3 at 43–50), there is no supporting

26   documentation in the record that DPT Heywood evaluated Plaintiff prior to July 1, 2020 or

27   has any basis for determining Plaintiff's impairments dating back to 2017. Instead, the

28   record contains evidence from several other medical sources that the ALJ properly

considered in rendering his disability determination that are contemporaneous to the disability period and inconsistent with DPT Heywood's conclusory medical source statements. For example, the ALJ noted the following objective findings, which were consistent across multiple examinations of Plaintiff: "normal muscle bulk, strength, sensation, gait, and deep tendon reflexes." (Doc. 19-3 at 32). These findings do not appear to support DPT Heywood's assessed limitations that Plaintiff is not capable of lifting more than five pounds or standing for more than one hour of the workday. (*Compare* Doc. 19-3 at 32 *with* Doc. 19-3 at 43–50). Further, the ALJ cited the opinions of five acceptable medical sources which were all consistent with one another and with the objective evidence on record, supporting the ALJ's finding that Plaintiff is capable to perform light work per 20 C.F.R. § 404.1567(b) and can sit, stand and/or walk for six hours in an eight-hour day." (Doc. 19-3 at 31, 33–34).

Considering the objective medical evidence and opinions from multiple acceptable medical sources that the ALJ cited in his decision, the Court finds that one contrary opinion post-dating the ALJ's disability determination would not be material to the ALJ's overall disability determination and likely would not have affected the outcome of the ALJ's decision. (*See generally* Doc. 19-3 (ALJ's opinion explaining reasons for denying benefits)).

Plaintiff also fails to demonstrate good cause for failing to submit the new evidence because she does not provide support for her assertion that the evidence was unavailable earlier. "A claimant does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied. To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier." *Mayes*, 276 F.3d at 463 (finding no good cause when the plaintiff "fail[ed] to explain why she did not seek or could not have obtained [the new evidence] before the ALJ Hearing"). Here, Plaintiff asserts only that the physical therapist's statements "where [sic] not available to Plaintiff prior to the ALJ's decision, an unavoidable circumstance beyond Plaintiff's control." (Doc. 22 at 13). A mere statement that the evidence was not available, without

1    any explanation or support to that effect, is not sufficient to show good cause. Indeed, if

2    DPT Heywood opinion was based on Plaintiff's impairments beginning in July 29, 2017

3    as she alleges, it is unclear to the Court why Plaintiff could not have procured his opinion

4    sooner than three months after the ALJ's decision.

5        As Plaintiff failed to meet both the materiality and good cause requirements, remand

6    is not warranted for further administrative proceedings on this ground.

7                  **b.  Plaintiff's June 19, 2020 MRI**

8        Plaintiff also seeks a remand for further administrative proceedings so that the ALJ

9    can evaluate an MRI of her lumbar spine dated June 19, 2020. (Doc. 19-3 at 41–42).

10       As noted by the Appeals Council in its Notice of Appeals Council Action, however,

11   the ALJ reviewed Plaintiff's medical records and determined Plaintiff's disability status as

12   of the date of his decision, March 30, 2020. (Doc 19-3 at 2). Because the MRI postdates

13   the ALJ's period of review, June 19, 2020, the MRI has no bearing on whether Plaintiff

14   was disabled on or before March 30, 2020. (*See id.*); *see also Held v. Colvin*, 82 F. Supp.

15   3d 1033, 1042 (N.D. Cal. 2015) (citing 20 C.F.R. § 404.970(b); *Sanchez v. Sec'y of Health*

16   *& Human Servs.*, 812 F.2d 509, 511 (9th Cir. 1987) (concluding that the new evidence not

17   before the ALJ "must be probative of the claimant's condition at or before the time of the

18   disability hearing" for remand to be proper).

19       Accordingly, the Court is not persuaded to remand Plaintiff's case on this basis.

20   **D.   Attorney's Fees**

21       Plaintiff also requests an award of attorney's fees. (Doc. 22 at 16). However,

22   because the Court is affirming the ALJ's decision, the Court denies Plaintiff's request for

23   attorney's fees. *See Flaherty v. Colvin*, No. CV 09-08106-PHX-JAT, 2013 WL 5447684,

24   at *1 (D. Ariz. Sept. 30, 2013) ("Section 406(b) provides that whenever the Court renders

25   a *favorable judgment* to a social security claimant, the Court can award reasonable

26   attorneys' fees for representation of the claimant. 42 U.S.C. § 406(b)(1)(A).") (emphasis

27   added).

28

**E.  CONCLUSION**

For the reasons stated above,

**IT IS ORDERED** that the final decision of the Commissioner of the Commissioner of Social Security is **AFFIRMED** and the Clerk of the Court shall enter judgment accordingly.

Dated this 17th day of March, 2022.

James A. Teilborg
Senior United States District Judge